## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION
## CASE NO. 5:13-cv-00092-F

| | |
|---|---|
| BRIAN C. BAKER,<br><br>              Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A., successor in interest to COUNTRYWIDE BANK, FSB, U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE BENEFIT OF THE LXS 2007-16N TRUST FUND, and SPECIALIZED LOAN SERVICING, LLC,<br><br>              Defendants. | **MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

This case presents a question of first impression in the Fourth Circuit. There are two different rescission provisions in the Truth-in-Lending Act ("TILA"). The first is an automatic, absolute, <u>self-executing</u> right to rescind within three days of entering into a loan agreement for <u>any reason whatsoever</u>. The second is an extended right to rescind because of a violation of provisions of TILA, including failure to provide material disclosures under TILA, which must occur within three years of closing. The Defendants, either deliberately or inadvertently, attempt to conflate these two very different provisions and present a confusing amalgam of irrelevant arguments about statutes of limitation and TILA violations that masks the obvious—any security interest Defendant Countrywide Bank might have had in Plaintiff Brian C. Baker's home has been void for years.

The facts and the law are both straightforward. Plaintiff Brian C. Baker ("Mr. Baker") properly took every action required under the TILA to rescind the loan that Defendant Countrywide Bank, FSB ("Countrywide") fraudulently swapped for the loan it had promised

him.  Mr. Baker exercised his <u>absolute, self-executing right to rescission within three days after closing</u> by timely mailing notice to Countrywide at the correct address, he offered to repay the loan proceeds, and he even filed bankruptcy to protect his home from foreclosure under the fraudulent loan documents.

Mr. Baker's loan has been rescinded and the Defendants' security interest is void.  That is what the law says, and what the small number of cases that have addressed this issue have found. Mr. Baker simply seeks court enforcement of a right that he timely exercised.  There is no basis for Defendants' Motion to Dismiss and the Court should deny it.

## <u>FACTS</u>[1]

The fact section of Defendants' Memorandum in Support of their Motion to Dismiss subtly distorts some of the Complaint's allegations, so it is important to emphasize the key facts, which are simple:  Brian Baker properly rescinded his loan with Countrywide within three days of entering into it, and under the self-executing provisions of TILA, Countrywide's security interest became void.  Looking at the key steps of this process in more detail:

- <u>Countrywide presents Mr. Baker with a Good Faith Estimate for a loan that is acceptable to him</u>. Countrywide initially presented Mr. Baker with a Good Faith Estimate dated May 25, 2007 (the "May 25 GFE")  setting out a proposed refinance in the principal amount of $645,337.00 to be paid over 30 years at a *fixed* interest rate of 4.875%, resulting in a monthly payment of $3,415.18.  The Truth-In-Lending Disclosure Statement accompanying the May 25 GFE (the "May 25 Disclosures") set out an annual percentage rate of 4.89% and a finance charge of $585,217.75.  [Compl. ¶¶ 17-18].

---

[1] As this Court is well aware, for purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

- <u>Countrywide substitutes a different document at closing</u>. At closing on June 13, 2007, however, Countrywide substituted a note that Mr. Baker had never seen before with completely different terms. The note Countrywide presented at closing for Mr. Baker's signature (the "Note") was an *adjustable rate* note in the principal amount of $640,000.00. The Truth-In-Lending Disclosure Statement presented at closing set out an annual percentage rate of 7.616% and a finance charge of $1,239,744.14—more than double the amount set out in the May 25 TIL Disclosures. Countrywide fraudulently swapped the terms of the May 25 GFE with an adjustable rate note at closing in a bait-and-switch intended to induce Mr. Baker to agree to a significantly higher interest rate. [Compl. ¶¶ 19-22].

- <u>Mr. Baker decides to rescind</u>. Mr. Baker reluctantly proceeded with the closing on June 13, 2007, including by executing a Deed of Trust securing payment of the Note (the "Deed of Trust"), but raised concerns about the terms presented in the closing documents. After comparing the closing documents with the May 25 GFE and the terms of his existing loan and determining that the Note Countrywide presented at closing carried an interest rate nearly 2% higher than his existing loan and 2.73% higher than what was promised, Mr. Baker took immediate action to rescind the June 13, 2007 transaction. [Compl. ¶¶ 23-25].

- <u>Mr. Baker sends, and Countrywide receives, timely notice of rescission</u>. On Friday, June 15, 2007—the second business day after the closing and within the three-day rescission period provided by 15 U.S.C. § 1635(a)—Mr. Baker mailed a signed rescission notice and accompanying letter (the "Rescission Notice") to the address designated by Countrywide in the Notice of Right to Cancel document provided to Mr. Baker at the

3

June 13, 2007 closing. Countrywide received Mr. Baker's Rescission Notice on Monday, June 18, 2007, the third business day after the June 13, 2007 closing (which fell on a Wednesday). [Compl. ¶¶ 26-27].

- **Countrywide ignores the rescission and disburses funds anyway.** Even though it received Mr. Baker's Rescission Notice within the three-business-day period provided in 15 U.S.C. § 1635(a), on June 18, 2007—the same day it received Mr. Baker's Rescission Notice—Countrywide authorized disbursement of the proceeds of the loan described in the June 13, 2007 closing to Bank of America to pay off Mr. Baker's existing loan and recorded the accompanying Deed of Trust. Even after multiple subsequent requests by Mr. Baker, Countrywide refused to unwind the transaction by cancelling the Deed of Trust presented at the June 13, 2007 closing or attempting to retrieve the disbursed proceeds from Bank of America. [Compl. ¶¶ 29-30].

- **Countywide refuses Mr. Baker's effort to tender the funds back to them.** After months of attempting to get Countrywide to unwind the transaction, in March of 2008, Mr. Baker applied to First Citizens Bank for a loan in the amount of $640,000.00 in an effort to repay the proceeds disbursed by Countrywide. Countrywide wrongfully refused to accept repayment of the loan proceeds, instead demanding an additional amount of approximately $7,000.00 as a pre-payment penalty. [Compl. ¶¶ 33-34].

- **Mr. Baker is forced into bankruptcy and his personal obligation under the loan is discharged.**[2] Ultimately, Defendant Bank of America, N.A. ("Bank of America")

---

[2] In their Memorandum, Defendants suggest that Mr. Baker believes his bankruptcy discharge nullified the lien created by the Deed of Trust in an effort to denigrate the Plaintiff's arguments. *See* Defendants' Memorandum at 3 n.2. Mr. Baker has never alleged that his bankruptcy discharge nullified the lien status of the deed of trust. The law

4

(successor to Countrywide and servicer at the time) instituted foreclosure proceedings under the rescinded loan that forced Mr. Baker to file bankruptcy to save his home. Mr. Baker received a discharge in his bankruptcy case on July 29, 2010 that discharged his personal obligations under the Note. [Compl. ¶¶ 35, 37, 40-43].

- In April of 2012, Bank of America again attempted to foreclose on Mr. Baker's home. [Compl. ¶ 46].

- Bank of America continues to refuse to cancel the Deed of Trust of record. In letters dated June 23, 2011, April 19, 2012, and June 7, 2012, Bank of America, through counsel, refused to cancel or mark satisfied the Deed of Trust without receiving payment of the proceeds of the Note, which was discharged in Mr. Baker's bankruptcy. [Compl. ¶ 45].

## ARGUMENT

### I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Specific facts are not necessary; the statement need only 'give the defendant fair

is clear that bankruptcy does not and cannot do that. Mr. Baker has consistently and properly asserted that the Deed of Trust became void when he rescinded the transaction within three business days of closing. Countrywide (and its successors) are simply being asked to cancel a deed of trust that should never have been recorded in the first place because it is invalid.

notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551

U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alteration in original).

## II. BECAUSE MR. BAKER'S RESCISSION WAS AUTOMATIC AND SELF-EXECUTING, DEFENDANTS' SECURITY INTEREST IS VOID AS A MATTER OF LAW.

Although the Complaint, the Motion to Dismiss and this response describe Mr. Baker's

claim as a TILA rescission, it is essential that the Court recognize that there are two materially

different types of rescission under the Act. Many of the arguments asserted in Defendants'

memorandum in support of their Motion to Dismiss are simply wrong because they conflate the

two different types of rescission provided for in the Truth-in-Lending Act.

Automatic Rescission, which is at issue here, gives a borrower an absolute, unconditional

right to rescind a loan secured by his principal residence within three days of closing during a

statutory "cooling off" period:

> [I]n the case of any consumer credit . . . in which a security interest . . . is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction . . . by notifying the creditor, in accordance with regulations of the Bureau, of his intention to do so.

15 U.S.C. § 1635(a).

The second kind of rescission is Extended Rescission, which is not at issue in this case.

Extended Rescission arises under sections 1635(a) and 1635(f). Section 1635(a) provides that

"the obligor shall have the right to rescind the transaction until midnight of the third business day

following the consummation of the transaction *or* the delivery of the information and rescission

forms required under this section together with a statement containing the material disclosures

required under this subchapter, whichever is later." *Id.* Section 1635(f) states that this type of

rescission (which extends rescission rights beyond the third business day in those cases where

proper notice is not given at closing) "shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first." Section 1635(f). Unlike Automatic Rescission, Extended Rescission requires a determination that material disclosures were not provided to the borrower.

Section 1635(b) sets out default procedures for unwinding a loan transaction when a borrower exercises his right to rescind: "When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes **void** upon such a rescission." 15 U.S.C. § 1635(b) (emphasis added). The statute requires a lender to take steps to unwind the transaction first, including dealing with any funds that flowed from the borrower to the creditor: "[w]ithin 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, down payment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction." *Id.* (emphasis added).

The statute also provides a means for dealing with funds that flow from the creditor to the borrower: "If the creditor has delivered any property to the obligor, the obligor may retain possession of it." *Id.* "Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value." *Id.* "If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it." *Id.* (emphasis added).

By sending the Rescission Notice within three business days after closing, Mr. Baker exercised his <u>absolute</u> and <u>self-executing</u> right to rescind during the "cooling off" period provided by section 1635(a). "The consumer's right to rescind during the first three business days after the loan closing is unconditional; the consumer may rescind the loan 'for any reason or for no reason.'" *WMC Mortg. LLC v. Baker*, No. 10–3118, 2012 WL 628003 at *9 (E.D. Pa. 2012) (quoting *McKenna v. First Horizon Home Loan Corp.*, 475 F.3d 418, 421 (1st Cir. 2007)). None of the Fourth Circuit cases cited by the Defendants address enforcement of a properly exercised <u>absolute</u> right to rescind within the three-day cooling off period. This appears to be a matter of first impression in this Circuit. *See id.* at *12, *14 (noting that "case law addressing the consequences of a consumer's exercise of the right to rescind within the initial three-day 'cooling off' period is sparse" and that "the vast majority of cases—and virtually all of the appellate cases—addressing this issue involve a consumer's exercise of the right to rescind beyond the initial three-day cooling off period.").

**A. Under the plain language of 15 U.S.C. § 1635, Defendants' security interest was void two days after closing—any other result would require this Court to improperly rewrite the statute.**

Under the plain language of the statute, a security interest is void immediately upon notice of rescission unless otherwise ordered by a court. *See* 15 U.S.C. § 1635(b) ("The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.") In the case of Extended Rescissions (which require a lender's failure to make material disclosures and can occur years after closing), some courts, including the Fourth Circuit, have altered the statutory framework to condition cancellation of the security interest upon the borrower's repayment of any loan proceeds. The logic for this is clear, since "'[o]therwise, a borrower could get out from under a secured loan simply by claiming TILA violations, whether

8

or not the lender had actually committed any.'" *Am. Mortg. Network, Inc. v. Shelton*, 486 F.3d 815, 821 (4th Cir. 2007) (quoting *Yamamoto v. Bank of New York*, 329 F.3d 1167, 1172 (9th Cir. 2003)). The *Shelton* court further explained, "The natural reading of [§ 1635(b)] is that the security interest becomes void when the obligor exercises a right to rescind that is available in the particular case, either because the creditor acknowledges that the right of rescission is available, or because the appropriate decision maker has so determined." *Id.* (quoting *Large v. Conseco Fin. Servicing Corp.*, 292 F.3d 49, 54-55 (1st Cir. 2002)).

Any concern about abusive borrowers cannot and does not arise in the case of an absolute and unconditional right to rescind during the three-day cooling off period. *See Bradford v. HSBC Mortg. Corp.*, 838 F. Supp. 2d 424, 428-29 (E.D. Va. 2012), *WMC Mortg.*, 2012 WL 628003 at *9. The *Shelton* court's logic is not even relevant here. Mr. Baker exercised his absolute right to rescind during the three-day cooling off period. The availability of the right to rescind in those three days is not subject to any determination by a creditor or a court as to whether any TILA violations have occurred—it is mandatory.

One court in this circuit that has looked at this issue recognized that the logic of *Shelton* does not extend to Automatic Rescissions made within the three-day cooling off period. In *Bradford v. HSBC Mortg. Corp.*, 838 F. Supp. 2d 424 (E.D. Va. 2012), the District Court for the Eastern District of Virginia, in deciding a case involving an Extended Rescission, made clear: "the conclusion reached here—that a borrower's notice of rescission does not itself require the lender to rescind under § 1635—applies only where, as here, the notice is sent outside of TILA's "three-day cooling-off period" that begins after the closing of the transaction." *Id.* at 428-29 (emphasis added); *see also McKenna*, 475 F.3d at 421. "This is so because, by default, a borrower has a vested right to rescind until 'midnight of the third business day following the

consummation of the transaction.'" *Id.* (quoting 15 U.S.C. § 1635(a)). The court specifically noted that its conclusion "does not extend to cases in which the borrower sends a rescission notice within the initial three-day period, as the right to in such cases is not contingent on the borrower's demonstration that the required TILA disclosures were not given at closing." *Id.*

**B. Those Courts that have analyzed the factual situation presented in this case have consistently found the applicable security interest to be void.**

Both the Ninth Circuit and the Eastern District of Pennsylvania have concluded that the default procedures of section 1635(b) apply when a borrower rescinds within the three-day cooling off period after closing and that the creditor's security interest is automatically void. *See Causey v. U.S. Bank Nat. Ass'n*, 464 Fed. Appx. 634, 635 (9th Cir. 2011); *WMC Mortg.*, 2012 WL 628003 at *16.

In *Causey*, it was undisputed that the plaintiff effectively invoked his absolute right to rescind the transaction within three business days of the loan closing. *Causey*, 464 Fed. Appx. at 635. It was also undisputed that the lender ignored the plaintiff's rescission notice and proceeded to fund the loan. *Id.* The court concluded that a notice of rescission sent within three days after closing was sufficient to accomplish rescission (and require application of the default sequence) under the standard set forth in *Yamamoto*, which was followed by the Fourth Circuit in *Shelton*. *Id.*

The Ninth Circuit's decision is important because it recognized a limit to the kind of statutory modification that occurred in *Shelton*. "Although the district court is authorized to modify the default sequence, <u>that authority ends once rescission is accomplished</u>." *Id.* at 635 (emphasis added). Based on this analysis, the court held that the district court had erred in denying rescission based on the consumer's inability to tender and remanded the case with instructions to "order that the defendant release its lien on the plaintiff's home and determine the

amount that the plaintiff must then tender to the defendant." *Id.* (also noting that plaintiff's previous attempted tender could impact the repayment amount).

The facts in *WMC Mortgage* are remarkably similar to the facts of this case. *WMC Mortgage* "concerns the consequences of a lender's failure to honor a borrower's timely exercise of the right to rescind a mortgage refinancing loan under [TILA] more than six years ago." *WMC Mortg.*, 2012 WL 628003 at *1. The borrowers (also named Baker) rescinded the loan in question by sending a rescission notice to the lender within three business days of the loan closing, as permitted under TILA. *Id.* The lender received the rescission notice, but proceeded to fund the loan anyway and then sold it to a third party. *Id.* The new holder pursued a foreclosure action, which the borrowers defended on the basis that the loan had been rescinded. *Id.*

In *WMC Mortgage*, the court applied the default procedures of section 1635 and held that a notice of rescission sent on the third day after closing (and five years before suit was filed) effectively rescinded the transaction, voiding the security interest. *Id.* at *16 ("Because the [borrowers] exercised their unconditional right to rescind the loan within the first three business days following the loan closing, and because modification of TILA's rescission provisions is not warranted, [the lender's] security interest in the [borrowers'] property is void."). "So long as the notice is timely, the creditor has no discretion not to honor it because the consumer may rescind for any reason or for no reason." *Id.* at *14 (quotation marks and citation omitted, emphasis added).

The court went on to note that "[i]n fact, to ensure rescission within this three-day period is honored, Regulation Z [which implements TILA] places the burden on the creditor to ensure a loan has not been rescinded before disbursing the loan proceeds." *Id.* Under Regulation Z,

"[u]nless a consumer waives the right of rescission . . . no money shall be disbursed other than in escrow . . . until the rescission period has expired and the creditor is reasonably satisfied that the consumer has not rescinded." 12 C.F.R. § 1026.23(c). "A creditor may satisfy itself a consumer has not rescinded by either '[w]aiting a reasonable time after expiration of the rescission period to allow for delivery of a mailed notice' or '[o]btaining a written statement from the consumer that the right has not been exercised.'" *WMC Mortg.*, 2012 WL 628003 at *14 (quoting 12 C.F.R. pt. 226, Supp. I ¶ 23(c)(4)).

The *WMC Mortgage* court found that the lender's disbursement of loan proceeds despite the borrower's timely notice of rescission on the third day after closing—exactly what Countrywide did here—was a "particularly egregious" violation of TILA and its implementing regulations that warranted cancellation of the lender's security interest before tender of the proceeds. *Id.* at *15. The court noted that the premature disbursement "placed the [borrowers] in a position in which they could not unwind the transaction on their own because they had no control over the bulk of the loan proceeds, which had been disbursed directly to their prior mortgage and home equity lenders." *Id.* This lead the court to conclude that "[p]ermitting a creditor to ignore a timely three-day rescission notice and still obtain the benefit of equitable modification of TILA's rescission procedures would effectively eliminate the cooling off period for consumers without easy access to alternative funding, and would eviscerate the effectiveness of rescission as an enforcement tool." *Id.*

Here, not only did Mr. Baker timely mail his Rescission Notice on the second day after closing, but a return receipt shows that Countrywide <u>received</u> notice on the third business day and proceeded to disburse the loan proceeds on that day (before the cooling off period even expired) anyway in direct violation of Regulation Z. [*See* Compl. ¶¶ 27, 29]. Granting

Defendants equitable relief from the plain language of section 1635 under these circumstances would simply reward their bad acts and, like the Bakers in Pennsylvania, it would effectively eliminate Mr. Baker's absolute statutory right of rescission within three business days of closing.

Accordingly, under the provisions of section 1635, Mr. Baker properly rescinded the loan transaction, Defendants' security interest in his property is void, and the Court should not dismiss Mr. Baker's claims for rescission and to quiet title based on a failure to allege an ability to tender the loan proceeds.

**III. MR. BAKER IS NOT REQUIRED TO REPAY LOAN PROCEEDS BECAUSE HE ALREADY OFFERED TO TENDER THEM, AND HIS OBLIGATION TO REPAY THE LOAN PROCEEDS WAS DISCHARGED IN BANKRUPTCY.**

There are two additional factors that support cancellation of Defendants' security interest absent tender of loan proceeds. First, even though Countrywide created the problem by disbursing the loan proceeds prior to expiration of the three-day cooling off period and with notice of Mr. Baker's rescission, Mr. Baker offered to tender the amount of the disbursed proceeds and Countrywide refused to accept tender. Second, Mr. Baker's obligation to repay the loan proceeds was discharged in his bankruptcy.

**A. Because Countrywide refused to accept Mr. Baker's offer to tender the loan proceeds, Mr. Baker has no further obligation to pay.**

Section 1635 provides:

> Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. . . . If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it.

15 U.S.C. § 1635(b) (emphasis added). Mr. Baker's Complaint alleges that in March of 2008, Mr. Baker applied to First Citizens Bank for a loan in the amount of $640,000.00 in an effort to

repay the proceeds disbursed by Countrywide. [Compl. ¶ 33]. When Mr. Baker offered to tender the proceeds of the First Citizens loan, Countrywide refused to accept repayment of the loan proceeds, instead demanding an additional amount of approximately $7,000.00 as a pre-payment penalty. [Compl. ¶ 34]. Under the terms of the statute, Countrywide's refusal to accept Mr. Baker's tender of the loan proceeds (alternately characterized as failure to take possession within 20 days) terminated Mr. Baker's obligation to repay the (wrongfully) disbursed proceeds. Because the Complaint does allege Mr. Baker's efforts to repay the loan proceeds and because he is no longer required to repay them, failure to allege intent to repay the proceeds is not a valid basis for dismissing Mr. Baker's claims for rescission and to quiet title.

**B. Mr. Baker's obligation to repay the loan proceeds was discharged in bankruptcy.**

Mr. Baker's obligation to repay the loan proceeds was terminated not only by his previous attempt to tender them, but also by the discharge he received in bankruptcy. Mr. Baker received his bankruptcy discharge on July 29, 2010, well after he signed then rescinded the Note and Countrywide disbursed the proceeds. [Compl. ¶ 42]. Accordingly, Mr. Baker's obligation to repay the proceeds was discharged in bankruptcy.

Though it may require a seemingly harsh result, the rights and obligations of the parties are clear under both TILA and the Bankruptcy Code:

> In a non-bankruptcy setting, the rights and duties of the parties upon TIL rescission are clear and absolute. Each party must make the other as whole as he would have been had the contract never been entered into. In the absence of bankruptcy, there is no legal impediment to either party doing what is required to restore the status quo ante. Consequently, the creditor's statutory duty to perform first merely establishes the order of performance; it does not alter the ultimate effect on the remedy.

> Bankruptcy, however, relieves the debtor from his obligation to pay the creditor upon rescission. Conditioning rescission upon the debtor's payment therefore imposes an obligation from which the debtor has been legally freed.

> Unlike the situation absent bankruptcy, there is a legitimate, legal impediment to the debtor's reciprocal performance. It would be palpably unfair to deny the relief to which a consumer is entitled under TIL because that consumer has also availed himself of bankruptcy relief. To do so would require that the consumer choose between bankruptcy and TIL, something neither form of statutory relief contemplates.

> The equities of which the creditor speaks lie in the debtors' favor. Upholding the creditor's plea for equity would allow the creditor to escape the consequences of a serious TIL violation, while at the same time negating the fresh start given the debtors upon their discharge.

*In re Piercy*, 18 B.R. 1004, 1007-08 (Bankr. W.D. Ky. 1982). *See also In re Cromwell*, 461 B.R. 99, 135 (Bankr. D. Mass. 2011), *rev'd on other grounds*, 483 B.R. 36 (D. Mass. 2012) (finding that conditioning rescission on full tender of loan proceeds would "undermine the purposes of the Bankruptcy Code and do violence to its provisions"). Because Mr. Baker's obligation to repay the loan proceeds was discharged in bankruptcy (and for the reasons discussed above), the court should not condition rescission upon tender of the proceeds, and he is not required to allege an intent or ability to repay the proceeds.

## IV.    MR. BAKER TIMELY EXERCISED HIS RIGHT OF RESCISSION UNDER TILA.

Mr. Baker brings this action to enforce his absolute right of rescission, which he timely exercised by mailing the Rescission Notice on the second business day after closing. Defendants' argument that Mr. Baker's claims are barred by TILA's one-year statute of limitations—which applies to claims for damages resulting from TILA violations—is misplaced.

The Fourth Circuit recently held that a borrower timely exercises his or her right to rescind under section 1635 by underlining notifying the creditor of the intention to do so—a borrower is not required to file a lawsuit. *Gilbert v. Residential Funding LLC*, 678 F.3d 271, 277 (4th Cir. 2012). In reaching that conclusion, the court reviewed the language of section 1635(f) as well as its implementing regulation, Regulation Z, which states:

> To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.

12 C.F.R. § 1026.23(a)(2). As the Fourth Circuit put it: "Simply stated, neither 15 U.S.C. § 1635(f) nor Regulation Z says anything about the filing of a lawsuit, and we refuse to graft such a requirement upon them." *Gilbert*, 678 F.3d at 277.

In finding that the *Gilbert* plaintiffs' claim for rescission was timely, the court made clear that the relevant act for determining timeliness of exercising a right of rescission is sending notification to the creditor, <u>not</u> the filing of a lawsuit:

> In other words, the three-year limitation in 15 U.S.C. § 1635 concerns the extinguishment of the right of rescission and does not require borrowers to file a claim for the invocation of that right. Thus, <u>that the [plaintiffs] failed to seek enforcement of their right to rescind within the three years does nothing to take away from the fact that they exercised their right of rescission within that time period</u>.

*Id.* at 277-78 (emphasis added).

Here, the relevant time period within which Mr. Baker had to exercise his <u>absolute</u> right to rescind was three business days after closing. He did so by mailing the Rescission Notice to Countrywide on the second business day after closing. [Compl. ¶ 26]. Under section 1635, Regulation Z, and *Gilbert*, Mr. Baker's claims to enforce rescission and to quiet title are timely.

In their memorandum, Defendants conflate the three-day and three-year limitations periods applicable to a borrower's right to rescind with the one-year statute of limitations to bring a claim for damages for a TILA violation, which Mr. Baker has not asserted.[3] Section 1640(a) provides that a creditor who fails to comply with any TILA requirement is liable to the

---

[3] Defendants' argument that Defendant Specialized Loan Servicing, LLC ("SLS") is not liable for TILA violations is thus moot. *See* Defendants' Memorandum at 11. With regard to Mr. Baker's rescission claim, SLS is named as a necessary party to the extent that SLS is the party responsible for executing documents to cancel the Deed of Trust of record.

borrower for actual and statutory damages.  15 U.S.C. § 1640(a).  Section 1640(e) states that "any action *under this section* may be brought in any United States district court . . . within one year from the date of the occurrence of the violation."  15 U.S.C. § 1640(e) (emphasis added).  The Fourth Circuit in *Gilbert* acknowledged this distinction by analyzing the plaintiffs' claim for "money damages" for the lender's failure to honor their right of rescission (to which the one-year statute of limitations applied) separately from their claim for enforcement of their right of rescission, which they timely exercised under section 1635(f) simply by notifying the lender.  *See Gilbert*, 678 F.3d at 278-79.

Every case cited by Defendants involved an Extended Rescission based on a lender's failure to make material disclosures in violation of TILA.  This case seeks enforcement of Mr. Baker's Automatic Rescission—his absolute, unconditional right of rescission, which, as discussed above, was effective upon mailing the Notice of Rescission.  Because Mr. Baker rescinded during the three-day cooling off period, he does not need an acknowledgement from the lender or a finding from a court regarding the availability of his right to rescind—it is absolute, and Defendants' security interest automatically became void under the terms of the statute.  Therefore, the date of any TILA violation (whether before or after the Rescission Notice) is immaterial to Mr. Baker's request that the Court to require Defendants to execute documents to reflect that fact of record.

## V.  MR. BAKER'S CLAIM FOR BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING IS VALID AND TIMELY.

### A.  The Complaint states a valid claim for breach of the implied duty of good faith and fair dealing.

While Mr. Baker does not assert claims for money damages under TILA, Defendants' actions in blatant contradiction of the duties imposed on them by TILA and the Federal Reserve

Board's Regulation Z support a claim for breach of the duty of good faith and fair dealing implied in the Note and Deed of Trust and imposed under North Carolina's Secure and Fair Enforcement Mortgage Licensing Act (the "S.A.F.E. Act"). *See In re Hinson*, 481 B.R. 364, 378-79 (Bankr. E.D.N.C. 2012) (holding that complaint stated valid claim for breach of the duty of good faith and fair dealing implied into mortgage loan servicing contract where defendants allegedly violated several duties imposed on them by Treasury regulations in handling requests for loan modifications).

Mr. Baker has already detailed Defendants' blatant violations of TILA and its implementing regulations in disbursing the loan proceeds prior to expiration of the three-day cooling off period and with notice of Mr. Baker's rescission. Defendants' actions also violated additional duties imposed by the S.A.F.E. Act. Section 53-244.110 of the North Carolina General Statutes provides that "[a]ny mortgage servicer . . . shall do all of the following: (1) Safeguard and account for any money handled for the borrower. (2) Follow reasonable and lawful instructions from the borrower. (3) Act with reasonable skill, care, and diligence." N.C. Gen. Stat. § 53-244.110. Section 53-244.111 prohibits mortgage servicers from taking the following actions:

> (1) To misrepresent or conceal the material facts or make false promises likely to influence, persuade, or induce an applicant for a mortgage loan or a mortgagor to take a mortgage loan, or to pursue a course of misrepresentation through agents or otherwise.

> (2) To improperly refuse to issue a satisfaction of a mortgage.

> . . .

> (8) To engage in any transaction, practice, or course of business that is not in good faith or fair dealing or that constitutes a fraud upon any person in connection with the brokering or making or servicing of, or purchase or sale of, any mortgage loan.

. . .

(14) To fail to comply with applicable State and federal laws and regulations related to mortgage lending or mortgage servicing.

N.C. Gen. Stat. § 53-244.111.

Defendants' violations of North Carolina's S.A.F.E. Act support a claim for violation of the duty of good faith and fair dealing implied in the Note and Deed of Trust. *See In re Hinson*, 481 B.R. at 380 (holding that "violations of [the S.A.F.E. Act] may serve as evidence of the breach of the implied duty of good faith and fair dealing in a contract" and upholding breach of implied duty claim).

### B. Mr. Baker's claim for breach of the implied duty of good faith and fair dealing is timely.

Mr. Baker's claim for breach of the duty of good faith and fair dealing implied in the Note and Deed of Trust is timely because those documents were signed under seal. The statute of limitations applicable to actions on a sealed instrument is 10 years under N.C. Gen. Stat. § 1-47(2). Both the Note and Deed of Trust were signed under seal, as indicated by the word "seal" appearing next to the signatures on the documents.[4] [Compl. ¶ 60, Exh. 3] *See Cameron v. Martin Marietta Corporation*, 729 F. Supp. 1529, 1530-31 (finding that "the presence of the word 'seal' is sufficient to qualify the contract as a sealed instrument for which the ten-year statute of limitations should apply" and noting that "[e]ven if it was unclear whether the contract was meant to be a sealed instrument, failure to meet the three-year statute of limitations would be an inappropriate ground for a motion to dismiss, since [i]f it is ambiguous as to whether a party

---

[4] The Court may refer to the Deed of Trust, which is a public record document specifically referred to in the Complaint at paragraphs 24 and 60 without converting this Motion to a motion for summary judgment. *Gibbs v. Potter*, 4:09–CV–37–DAN, 2010 WL 3811802 at *2 (E.D.N.C. 2010). A copy of the Deed of Trust is attached as Exhibit A.

adopted a seal, it is a jury question as to whether the party signed under seal." (quotation marks and citation omitted)).

Defendants' breaches of the implied duty of good faith and fair dealing occurred no earlier than the closing on June 13, 2007. Because this action was instituted less than six years later on February 7, 2013, Mr. Baker's claim for breach of the duty of good faith and fair dealing implied in those sealed instruments is timely.

## VI.  DEFENDANTS' ACTIONS SUPPORT AN AWARD OF PUNITIVE DAMAGES.

Mr. Baker's Complaint properly alleges that Defendants' conduct in wrongfully disbursing the loan proceeds and refusing to accept tender or cancel the Deed of Trust of record was willful and wanton, warranting an award of punitive damages under N.C. Gen. Stat. § 1D-15. Willful or wanton conduct is defined as "the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm." N.C. Gen. Stat § 1D–5(7). "This can be shown by 'a reckless indifference to the consequences of the act.'" *Russ v. Causey*, 732 F. Supp. 2d 589, 609 (E.D.N.C. 2010) (quoting *Byrd v. Adams*, 152 N.C. App. 460, 462, 568 S.E.2d 640, 642 (2002).

The Complaint alleges that Countrywide (and therefore its successor Bank of America) at the very least recklessly disregarded Mr. Baker's absolute right of rescission by disbursing the loan proceeds prior to expiration of the three-day cooling off period and with notice of Mr. Baker's rescission in direct violation of TILA and Regulation Z. [Compl. ¶ 29]. The court in *WMC Mortgage* found a lender's similar but less severe conduct in this context "particularly egregious." *WMC Mortg.*, 2012 WL 628003 at *15. Defendants (including U.S. Bank and SLS) persisted in this reckless indifference to Mr. Baker's rights by refusing to accept Mr. Baker's

tender of the loan proceeds and refusing to cancel the Deed of Trust of record when confronted with Mr. Baker's clear rescission and their own actions in clear violation of TILA and its implementing regulations.

In any case, Defendants' citation of the standard of proof for an aggravating factor is irrelevant in the context of a Rule 12(b)(6) motion to dismiss, which simply examines the content of the complaint for allegation of an appropriate aggravating factor. *See Bradley v. Ramsey*, 329 F. Supp. 2d 617, 629 (W.D.N.C. 2004) (upholding claims for punitive damages where complaint alleged conduct involving "reckless or callous indifference to the federally protected rights of others" (quotation marks and citation omitted)). Mr. Baker's Complaint alleges Defendants' actions in direct contradiction of Mr. Baker's absolute right of rescission under TILA, and that is enough to support a claim for punitive damages.

## CONCLUSION

For the reasons discussed above, the Court should deny Defendants' Motion to Dismiss in its entirety.

Dated: April 29, 2013

LAW OFFICE OF JAMES C. WHITE, P.C.

/s/ Michelle M. Walker
James C. White, N.C. Bar # 31859
Michelle M. Walker, N.C. Bar # 41664
P.O. Box 16103
Chapel Hill, NC 27516
mwalker@jcwhitelaw.com
(919) 313-4636
(919) 246-9113 fax

ATTORNEYS FOR PLAINTIFF

21

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **Memorandum in Opposition to**

**Defendant's Motion to Dismiss** with the Clerk of Court using the CM/ECF system, which will

send electronic notice to the following:

     D. Kyle Deak, Esq.
     Troutman Sanders LLP
     Post Office Drawer 1389
     Raleigh, North Carolina 27602
     kyle.deak@troutmansanders.com
     *Attorneys for Defendants*


Dated:  April 29, 2013

                          /s/ Michelle M. Walker