UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:13-CV-92-F

| | |
|---|---|
| BRIAN C. BAKER,<br>                     Plaintiff<br><br>v.<br><br>BANK OF AMERICA, N.A., successor in interest to COUNTRYWIDE BANK, FSB, U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE BENEFIT OF LXS 2007-16N TRUST FUND, and SPECIALIZED LOAN SERVICING, LLC<br>                     Defendants. | ORDER |

This matter is before the court on the Defendants' motion to dismiss [DE-8]. Plaintiff has filed a response in opposition and the matter is now ripe for resolution. For the reasons that follow, the motion is ALLOWED and the complaint is DISMISSED.

**RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Brian C. Baker ("Baker") initiated this action by filing a complaint on February 7, 2013, asserting claims for violation of the Truth in Lending Act, quiet title, and breach of the duty of good faith and fair dealing. Compl. [DE-1]. Defendants (collectively "Bank of America" or "Countrywide") move to dismiss the complaint in its entirety for failure to state a claim upon which relief can be granted. On a motion to dismiss, the court accepts as true all well-pleaded factual allegations contained in the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.*, provides for two time periods in which a consumer can rescind[1] a home loan transaction. The first is a three-day statutory "cooling-off" period, which allows a consumer to rescind the transaction for any reason or for no reason within three business days of the closing date. 15 U.S.C. § 1635(a). The second is a three-year period, which applies when a creditor fails to provide certain TILA-mandated disclosures. *See* § 1635(a), (f); 12 C.F.R. § 226.23. The issues presented by this case are twofold: (1) if a borrower sends notification of rescission within the three-day statutory cooling-off period and the creditor does not acknowledge the notice, must the borrower file a lawsuit to complete the rescission process?; and (2) if so, what statute of limitation, if any, applies? Because the court concludes that a lawsuit is required to complete rescission in these circumstances and that the relevant statute of limitations is at most four years, the court finds that this lawsuit is untimely.

In this case, Baker alleges that he provided notification of rescission within the three-day cooling-off period and that Countrywide[2] failed to respond to the notice. The parties' relationship began when Baker sought refinancing of his home mortgage loan. Countrywide provided Baker with a good faith estimate for the proposed refinance, which included a principal loan amount of $645,337.00, to be paid over thirty years at a fixed interest rate of 4.875%.

---

[1] Congress did not provide a definition for "rescission" in the TILA, which, as discussed below, has caused no shortage of confusion in the case law. The Fourth Circuit, in a somewhat similar TILA case, described rescission as follows: "[t]he effect of rescission of an agreement is to put the parties back in the same position they were in prior to the making of the contract. On rescission of a contract, the contract is declared nonexistent and rescission places the parties in the position they would have been in had the agreement never been executed. Thus, a party seeking rescission of a contract must disgorge the fruits of the bargain." *Jones v. Saxon Mortg. Inc.*, 537 F.3d 320, 326 (4th Cir. 1998) (internal citation omitted).

[2] Countrywide was subsequently purchased by Bank of America.

However, at the closing on June 13, 2007, Countrywide allegedly substituted a note with different financing terms. The substituted note provided for an adjustable rate mortgage and a principal loan amount of $640,000.00. The truth in lending disclosure statement provided at closing identified an annual percentage rate of 7.616% and a total finance charge of $1,239,744.14, which was more than double the finance charge associated with the good faith estimate. For reasons that are not quite clear from the complaint, Baker proceeded with the closing on June 13, 2007 despite the significantly different loan terms.

On June 15, 2007, the second business day after the closing, Baker mailed a signed rescission notice to Countrywide and Countrywide received the notice on June 18, 2007. Nevertheless, Countrywide ignored the rescission document and proceeded to fund the loan. Baker alleges that he sent multiple subsequent requests to unwind the transaction, but Countrywide refused each request.

In March of 2008, Baker applied for a new loan from First Citizens Bank, allegedly in an attempt to pay off the Countrywide loan and substitute a new (more favorable) refinancing loan. Countrywide refused to accept immediate repayment of the loan proceeds unless Baker agreed to a $7,000 prepayment penalty. Baker's attempt to refinance through First Citizens was ultimately unsuccessful and Baker became delinquent on the Countrywide loan. Eventually, Bank of America (as successor to Countrywide) initiated foreclosure proceedings. Baker declared personal bankruptcy and he received a discharge in the bankruptcy case, which Baker alleges has discharged his personal obligations under the mortgage note.

After the bankruptcy discharge, Bank of America again pursued foreclosure proceedings, which are presumably stayed pending the outcome of this litigation. Despite numerous written

3

demands, Bank of America refuses to cancel its security interest in the home and rescind the transaction unless Baker agrees to tender all proceeds received under the note.

## ANALYSIS

### A. Standard of Review

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of the complaint, not to resolve conflicts of fact or to decide the merits of the action. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). In considering a motion to dismiss, the court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'shp*, 213 F.3d 175, 180 (4th Cir. 2000). However, the "'[f]actual allegations must be enough to raise a right to relief above the speculative level' and the plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 n.26 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense [such as the statute of limitations]." *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011) (internal quotation marks omitted). The court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" when deciding a Rule 12(b)(6) motion. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

4

## B. Discussion

Because this case resolves into an issue of statutory interpretation, the court begins with a brief overview of the relevant provisions. *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6 (2000) ("We begin with the understanding that Congress says in a statute what it means and means in a statute what it says there."). The TILA was enacted "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uniformed use of credit . . . ." 15 U.S.C. § 1601(a). TILA allows for rescission of certain loans[3] secured by a borrower's principal residence in two circumstances: (1) under § 1635(a), "the obligor shall have the right to rescind the transaction until midnight of the third business day following [the latter of] consummation of the transaction or [delivery of various disclosures and forms required under TILA;]" or (2) if the lender fails to make the required TILA disclosures, "[a]n obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first." § 1635(f). As Baker stresses, these provisions provide for two distinct rescission periods. The three-day "cooling-off" period allows a borrower to rescind for any reason or for no reason; the three-year rescission period allows the borrower to rescind only if the lender failed to make certain TILA-mandated disclosures. *See McKenna v. First Horizon Home*

---

[3] TILA's rescission provisions do not apply to certain "residential mortgage transactions." *See* § 1635(e). The parties do not argue that this transaction is exempted under § 1635(e). The court assumes the transaction is not exempted because Countrywide is not the "same creditor" that originated Baker's initial mortgage. *See id.* ("[Section 1635] does not apply to . . . a transaction which constitutes a refinancing . . . of an existing extension of credit *by the same creditor* secured by an interest in [the borrower's principal residence]." (emphasis added)).

5

*Loan*, 475 F.3d 418, 421 (1st Cir. 2007); *Bradford v. HSBC Mortg. Corp.*, 838 F. Supp. 2d 424, 428-29 (E.D. Va. 2012).

Much of the dispute in the present case involves § 1635(b), which provides a default process for rescission of the loan:

> (b) Return of money or property following rescission. When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

*Id.* In addition, TILA provides for civil liability when a lender fails to comply with its requirements. § 1640(a). As relevant here, TILA imposes a one-year statute of limitations on all claims for civil liability: "any action under [section 1640] may be brought in any United States district court . . . within one year from the date of the occurrence of the violation . . . ." § 1640(e).

As discussed, the issues presented by this case are twofold: (1) if a borrower sends notification of rescission within the three-day statutory cooling-off period and the creditor does not acknowledge the notice, must the borrower file a lawsuit to complete the rescission process?; and (2) if so, what statute of limitation, if any, applies? The first issue implicates so-called "automatic rescission." Specifically, Baker argues that because he mailed his rescission notice

6

within the three-day period, Countrywide's security interest in the property was automatically voided upon receipt of the notice. Baker maintains there is no need to file a lawsuit to complete rescission itself in these circumstances; rather, it is accomplished automatically and the function of the present case is simply to obtain a judicial declaration that the security interest is void.

### 1. Automatic Rescission

At this stage of the litigation, the court presumes that Baker mailed a valid notice of rescission within the three-day statutory cooling-off period. The case law addressing the effect of a notice of rescission sent within the three-day period is exceedingly sparse. Baker's position is that because the right of rescission within three business days is "unconditional" and "absolute," his notice of rescission was sufficient to automatically void the security interest. In the court's view, the statutory language precludes this result.

To support his theory of automatic rescission, Baker relies primarily on the first sentence of § 1635(b), which provides "[w]hen an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission." *Id.* Fatal to Baker's argument, however, is the fact that this sentence distinguishes "when an obligor exercises his right to rescind" and full rescission, as contemplated in the final phrase, "void upon such a rescission." *Id.* The security interest, therefore, only becomes void upon full rescission.

The exercise of the right to rescind occurs when a borrower mails notification of intent to rescind. *See Gilbert v. Residential Funding LLC*, 678 F.3d 271, 277 (4th Cir. 2012) ("[A] borrower exercises her right of rescission by merely communicating in writing to her creditor her

7

intention to rescind."). The "right to rescind" or the "exercise of the right to rescind" is not the same as full rescission, which contemplates a full unwinding of the transaction and a return to the status quo prior to the transaction. *See id.* ("[To accomplish full rescission], [e]ither the creditor must acknowledge that the right of rescission is available and the parties must unwind the transaction amongst themselves, or the borrower must file a lawsuit so that the court may enforce the right to rescind."); *Large v. Conseco Fin. Servicing Corp.*, 292 F.3d 49, 54–56 (1st Cir. 2002); *Yamamoto v. Bank of New York*, 329 F.3d 1167, 1169-73 (9th Cir. 2003); *Ray v. Citifinancial, Inc.*, 228 F. Supp. 2d 664, 667-68 (D. Md. 2002). Thus, under the plain language of the first sentence of § 1635(b), the creditor's security interest does not become void until "such a rescission" has been fully accomplished. *See Large*, 292 F.3d at 54-55 ("Neither the statute nor the regulation establishes that a borrower's mere assertion of the right to rescission has the automatic effect of voiding the contract."); *In re Merriman*, 329 B.R. 710, 718-20 (D. Kan. 2005) ("The statute does not state . . . that the security interest becomes void upon the giving or receipt of notice. Rather, the statute states that the security interest 'becomes void upon rescission.' Nothing in the statute suggests that giving notice of rescission is synonymous with 'upon rescission.' The plain language of the statute indicates that exercising the right to rescind is a discrete event; and rescission is a separate discrete event.").

Baker attempts to avoid this result by arguing that most of the case law distinguishing between exercising the right of rescission and full rescission has been litigated in the context of the three-year extended right of rescission, not the three-day unconditional right. *See, e.g.*, *Gilbert*, 678 F.3d at 277; *Large*, 292 F.3d at 51; *Yamamoto*, 329 F.3d at 1172. The court acknowledges that the distinction makes more sense in the context of the extended right of

8

rescission, which arises only when the lender fails to make certain material disclosures, an issue of fact the lender can contest. *See Am. Mortg. Network, Inc. v. Shelton*, 486 F.3d 815, 821 (4th Cir. 2007) (explaining unilateral notification of rescission cannot void the security interest because the creditor must be allowed time to contest the alleged failure to provide material disclosures). Distinguishing between exercising the right of rescission and full rescission in this context preserves the lender's right to contest the grounds for rescission. In the context of the three-day statutory cooling-off period, however, where the borrower may rescind for any reason or for no reason, *McKenna*, 475 F.3d at 421, there is nothing for the lender to contest; the transaction must be rescinded.

However, where the statute's language is plain, "the sole function of the courts . . . is to enforce it according to its terms." *Hartford Underwriters*, 530 U.S. at 6. As discussed, § 1635(b) distinguishes between the exercise of the right of rescission and full rescission. It is also clear to the court that § 1635(b) refers to both the unconditional three-day period of rescission and the extended right of rescission. *See* § 1635(b) ("When an obligor exercises his right to rescind *under subsection (a) of this section* [which provides for both the three-year and the three-day rights of rescission] any security interest . . . becomes void upon such a rescisison.") (emphasis added). Accordingly, the court cannot adopt the view that notification of rescission within the three-day statutory period effects an automatic voiding of the security interest. Such an interpretation contravenes the plain language of § 1635(b), which distinguishes the exercise of the right to rescind (whether accomplished within the three-day period or the three-year period) and full rescission (which requires a full unwinding of the transaction and a return to the status quo).

9

Baker also points to two cases in support of his theory of automatic rescission: *Causey v. U.S. Bank Nat'l Ass'n*, 464 F. App'x 634 (9th Cir. 2011) and *WMC Mortgage LLC v. Baker*, No. 10-3118, 2012 WL 628003 (E.D. Pa. Feb. 28, 2012). The court acknowledges that both of these cases seemingly come to a contrary conclusion, finding that notification sent within the three-day period automatically voids the security interest. *Causey*, 464 F. App'x at 635; *WMC Mortgage*, 2012 WL 628003, at *14. In light of the fact that these cases are both unpublished and non-binding in this circuit, the court declines to follow their reasoning. In the court's view, neither case sufficiently addresses the distinction between exercising the right to rescind and full rescission, as contemplated in § 1635(b).

Baker also submits that the second sentence of § 1635(b) supports his position. The second sentence provides, "[w]ithin 20 days after receipt of a notice of rescission, the creditor shall . . . take any action necessary or appropriate to reflect the termination of any security interest created under the transaction." *Id.* Taken in isolation, the sentence suggests that the security interest is void upon receipt of a notice of rescission, especially in the context of a properly-exercised unconditional three-day right of rescission. However, the sentence must be read in the context of the entire provision which, as explained, distinguishes between the exercise of the right to rescind and full rescission. If "shall take any action necessary or appropriate to reflect termination of the security interest" required the lender to automatically void the security interest, the distinction between exercising the right of rescission and full rescission would be essentially meaningless in the context of both the three-day rescission right and the extended rescission right.

The second sentence also must be read in the context of the final sentence of § 1635(b), which provides "[t]he procedures prescribed by this subsection shall apply except when otherwise ordered by the court." *Id.* As the Northern District of Illinois recently observed, "[t]here would be no time for the court to modify those procedures if rescission is completed immediately upon the sending of a rescission notice." *Iroanyah v. Bank of Am., N.A.*, 851 F. Supp. 2d 1115, 1124-25 (N.D. Ill. 2012). Instead, as the *Iroanyah* court observed, the proper interpretation of the "shall take any action necessary or appropriate to reflect termination of the security interest" language is that the lender must begin the process of terminating the security interest within twenty days of receiving notice of the rescission, not that the security interest is automatically void upon receiving notice. *Id.* This interpretation of § 1635(b) is consistent with the Federal Reserve Board's Official Commentary on TILA, which binds the court unless found to be "demonstrably irrational." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565 (1980); *Iroanyah*, 851 F. Supp. 2d at 1125. The Federal Reserve Board has observed that "[t]he 20-day period for the creditor's action [provided for in § 1635(b)] refers to the time within which the creditor must begin the process. It does not require all necessary steps to have been completed within that time, but the creditor is responsible for seeing the process through to completion." 12 C.F.R. pt. 226, Supp. I, Subpt. C, ¶ 23(d)(2). Thus, the second sentence of § 1635(b) does not support the position that the security interest is automatically void upon receipt of notice of rescission.

Accordingly, the court finds that full rescission is not "automatic" upon the lender's receipt of the notice of rescission even in cases where the borrower exercised the right to rescind within the three-day statutory "cooling-off" period. That a borrower has an unconditional right to

11

rescind within three business days of the loan closing does not mean that rescission is automatic upon mailing the notice. The contrary interpretation contravenes the language of statute and the traditional common law understanding of the equitable right of rescission, which contemplates an unwinding of the transaction and a return to the status quo. *Gilbert*, 678 F.3d at 277; *Shelton*, 486 F.3d at 820-21; *Ray*, 228 F. Supp. 2d at 667-68. Because the court finds rescission is not automatic upon receipt of notice, either the borrower or lender must take additional steps to accomplish full rescission of the loan.

In this case, the lender failed to respond to Baker's notice of rescission and proceeded to fund the loan. After it became apparent to Baker that Countrywide was not responding to his requests for rescission, the only way to fully enforce his rescission rights was to file a lawsuit seeking rescission and possible statutory damages.[4] Thus, the court finds that a borrower such as Baker, who exercises his right to rescission within three business days of closing, must file a lawsuit to complete the rescission process in cases where the lender fails to respond to the notice or otherwise fails to recognize the borrower's rescission rights. Accordingly, the next question is what statute of limitation, if any, applies to filing such a rescission lawsuit.

### 2. Statute of Limitation

TILA does not explicitly provide a statute of limitation for filing a lawsuit seeking rescission of a home loan under TILA's provisions. The omission has produced an impressive amount of litigation and a body of case law that, if not always consistent, is certainly extensive.

---

[4] The court recognizes that the cost of pursuing a lawsuit may deter some borrowers from fully enforcing their rescission rights in these circumstances. However, TILA provides for attorneys fees in cases where, as here, the lender violates TILA by failing to respond to a timely notice of rescission. *See* 15 U.S.C. § 1640(a); *Belini v. Washington Mut. Bank, FA*, 412 F.3d 17, 25 (1st Cir. 2005) (explaining lender's failure to comply with § 1635(b) gives rise to claim for damages under TILA).

Some courts have held that the three-year "statute of repose" provided for in § 1635(f) fixes an outer limit on filing a lawsuit seeking rescission of a home loan under TILA. *See, e.g., Keiran v. Home Capital, Inc.*, 720 F.3d 721, 726-29 (8th Cir. 2013); *Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172, 1187-88 (10th Cir. 2012); *Bradford*, 799 F. Supp. 2d at 629-33;[5] *Rivera v. BAC Home Loans Servicing, L.P.*, 756 F. Supp. 2d 1193, 1197-99 (N.D. Cal. 2010). These cases have relied on the Supreme Court decision in *Beach v. Ocwen Fed. Bank*, 523 U.S. 410 (1998), in which the Supreme Court held that § 1635(f) imposes a three-year "statute of repose" on the right of rescission under TILA, meaning the rescission right completely expires at the end of the three-year period. *See id.* at 417-18. Relying on the "extinguish completely" language from *Beach*, these courts have held that a lawsuit seeking to enforce rescission rights under TILA must be filed within three years of the date on which the right to rescind arose. *See, e.g., Keiran*, 720 F.3d at 726-29; *Rosenfield*, 681 F.3d at 1187-88; *Bradford*, 799 F. Supp. 2d at 629-33.

Other courts have adopted the view that the one-year statue of limitations on claims for civil damages should also apply to claims seeking rescission. *See* 15 U.S.C. § 1640(e) (providing for one-year statute of limitations on claims for civil damages under TILA). The theory in these cases is that once a borrower files a valid notice of rescission and the lender fails to respond in accordance with § 1635(b), the lender has violated TILA and the borrower has one year in which to file suit for both rescission and damages under § 1640(e).[6] These cases also distinguish *Beach*

---

[5] The court notes that *Bradford*, to the extent it holds that a borrower must file a lawsuit within three years to complete rescission under TILA, has been abrogated by the Fourth Circuit's opinion in *Gilbert*, 678 F.3d at 277. *Gilbert* is addressed in more detail below.

[6] As Baker points out, this position is not wholly consistent with the statutory language, which provides that "any action *under this section* may be brought . . . within one year from the date of the occurrence of the violation." § 1640(e) (emphasis added). Because § 1640 applies to claims for civil damages under TILA, it is arguable that Congress did not intend the one-year limitations period under §

13

and the cases adopting the three-year statute of repose on the basis that § 1635(f) applies to the exercise of the right of rescission (accomplished by mailing the notice of rescission) and does not address the time period for filing a lawsuit. *See, e.g., Toney v. Lasalle Bank Nat'l Ass'n*, 896 F. Supp. 2d 455, 477-78 (D.S.C. 2012), *aff'd* 512 F. App'x 363 (4th Cir. 2013); *Barnes v. Chase Home Fin., LLC*, 825 F. Supp. 2d 1057, 1063-67 (D. Or. 2011); *Briosos v. Wells Fargo Bank*, 737 F. Supp. 2d 1018, 1023-27 (N.D. Cal. 2010); *Johnson v. Long Beach Mortg. Loan Trust*, 451 F. Supp. 2d 16, 40-41 (D.D.C. 2006). Notably, none of these cases have found that silence in the statute results in an unlimited limitations period for claims seeking rescission.

Thankfully, it is not necessary to enter the debate in this particular case, except to reject the theory that an unlimited statute of limitations applies. This is so because this TILA suit is untimely under all of the various alternatives except the unlimited limitations period theory. Baker's right of rescission arose, at the latest, on July 5, 2007, when Countrywide failed to respond to his rescission notice within twenty days as required by § 1635(b). *See Belini*, 412 F.3d at 26. Baker filed this lawsuit on February 7, 2013, nearly six years later. Under either the three-year or the one-year statutes of limitation, the suit is untimely.

The only way Baker's suit is timely is if an unlimited statute of limitations applies. The court rejects this theory. Such an unlimited statute of limitation would place a perpetual cloud on title to the property in these cases. *Keiran*, 720 F.3d at 727-29. Subsequent purchasers could never be sure that a prior owner did not exercise his right of rescission within the relevant statutory period of repose, but, for whatever reason, the prior owner was waiting to file a lawsuit

---

1640(e) to apply to claims seeking rescission. However, in the absence of a statute of limitations that specifically references rescission, these courts have adopted the one-year limitations period on the theory that some limitations period must apply.

14

seeking rescission. *See Beach*, 523 U.S. at 418-19 ("Since a statutory right of rescission could cloud a bank's title on foreclosure, Congress may well have chosen to circumscribe that risk.").

Finally, the court notes that the Fourth Circuit's recent decision in *Gilbert* does not foreclose the outcome reached here. In *Gilbert*, the Fourth Circuit was presented with the issue of whether a borrower must file a lawsuit to fully enforce his rescission rights within the three-year statute of repose. *Gilbert*, 678 F.3d at 276. Holding that the lawsuit did not have to be filed within three years, the Fourth Circuit reasoned "[w]e must not conflate the issue of whether a borrower has exercised her right to rescind [within the relevant time frame] with the issue of whether the rescission has, in fact, been completed and the contracted voided." *Id.* at 277. The *Gilbert* court did not address the issues presented by this case: whether a borrower must file a lawsuit to complete rescission when the lender fails to respond to the notification of rescission, and if so, what statute of limitation applies to filing the lawsuit.

### 3. Breach of the Covenant of Good Faith and Fair Dealing Claim

The court does not have an independent basis for jurisdiction over Baker's state law breach of the covenant of good faith and fair dealing claim because Baker and Bank of America are both residents of the same state. *See Strawbridge v. Curtiss*, 7 U.S. 267, 267 (1806) (explaining diversity jurisdiction requires diversity among all plaintiffs and all defendants). Accordingly, jurisdiction over Baker's state law claim is premised on supplemental jurisdiction, which exists where a plaintiff raises both federal and state law claims in the same lawsuit. 28 U.S.C. § 1367(a). However, because the court will allow the motion to dismiss as to Baker's federal claim, the court may decline to exercise supplemental jurisdiction over Baker's state law claim. *See* 28 U.S.C. § 1367(c)(3); *Hunt v. Branch Banking & Trust Co.*, 480 F. App'x 730, 732

15

(4th Cir. 2012). In this regard, the Supreme Court has stated that when "federal claims are dismissed before trial . . . state claims should be dismissed as well." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). The Court has considerable discretion in deciding whether to extend supplemental jurisdiction. *Hunt*, 480 F. App'x at 732.

Here, the court declines to extend supplemental jurisdiction over Baker's state law claim. The parties in this case dispute whether an independent cause of action for breach of the covenant of good faith and fair dealing exists under North Carolina law. In addition, Baker argues that Bank of America's alleged violations of North Carolina's Secure and Fair Enforcement Mortgage Licensing Act, N.C. Gen. Stat. § 53-244.010 *et seq.*, support his claim for breach of the covenant of good faith and fair dealing. These complex question of state law are best left to the North Carolina courts. *See Gibbs*, 383 U.S. at 726 ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.") Pursuant to 28 U.S.C. § 1367(d), the period of limitation for any supplemental claim shall be tolled while the claim is pending in federal court and for a period of 30 days after it is dismissed. Therefore, Baker will have 30 days after the date of this Order to refile his supplemental claim in state court if he so chooses.[7]

---

[7] Of course, that is not to say that the claim is otherwise timely. If the state law claim was not timely at the time Baker's case was filed in this court, the fact that the limitations period was tolled during the pendency of this lawsuit is irrelevant. The court obviously takes no position on this issue.

16

## CONCLUSION

Bank of America's motion to dismiss [DE-8] is ALLOWED and the complaint is hereby DISMISSED. Count three, Baker's claim for breach of the covenant of good faith and fair dealing, is DISMISSED without prejudice to file in state court. Counts one and two are DISMISSED with prejudice. The Clerk of Court is DIRECTED to close this case.

SO ORDERED.

This, the **17** day of January, 2014.

*James C. Fox*
JAMES C. FOX
Senior United States District Judge